# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED BROWN, | CASE NO. 1:02-cv-06018-LJO-DLB PC |
|                 Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART |
|    v. | |
| EDGAR CASTILLO, et al., | ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO RESPOND TO DEFENDANTS' REPLY |
|                 Defendants. | |
| _____/ | (Docs.  102, 110, 159, 167) |

I.      Defendants' Motion for Summary Judgment

     A.      Procedural History

Plaintiff Alfred Brown ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his first compliant on August 20, 2002, wherein he alleged that defendants CASTILLO, former Chief Medical Officer; CURTIS, former American with Disabilities Act Medical Coordinator; KING, Correctional Counselor II; BARBEIRO, former Medical Appeals Analyst; WALKER, Correctional Officer; BUNKER, Medical Technical Assistant (MTA); MATHOS, former Public Health Nurse; DUVALL, Inmate Appeals Coordinator; and DULAY, MTA, violated the Eighth Amendment by acting with deliberate indifference to his serious medical needs from July 2001 until January 2002 (Doc. 1). Specifically, plaintiff alleged that during his incarceration at the California Substance Abuse Treatment Facility (CSATF) at Corcoran State Prison, defendants were deliberately indifferent to

his medical needs by falling to provide him with a replacement for his old wheelchair. (Complaint ¶¶ 16-18).  He further alleged that on January 28, 2002, he fell out of his wheelchair and suffered physical injuries. (Complaint ¶¶ 16-18).

On August 4, 2003, defendants Barbeiro, Castillo, Curtis, Dulay, Duvall, King, Mathos and Walker (hereinafter, "defendants") filed a motion to dismiss pursuant to 29 U.S.C. § 1925(g). (Doc. 11).  On November 21, 2003, the court recommended that defendants' motion to dismiss be denied. (Doc. 35). On February 10, 2004, defendants' filed a second motion to dismiss based on plaintiff's failure to exhaust administrative remedies. (Doc. 38).  On June 2, 2004, the Magistrate Judge recommended that the motion to dismiss be granted in part. (Doc. 44).  The court found that the plaintiff had exhausted administrative remedies as to his request for a replacement wheelchair, but not as to the January 28, 2002 incident in which plaintiff fell from his wheelchair. Id.  The court recommended that plaintiff's claim regarding the January 2002 incident, but denied defendants' motion to dismiss the wheelchair claim. Id. On September 17, 2004, the District Court found that plaintiff had exhausted administrative remedies with regard to the January 2002 incident and denied defendants' motion.  (Doc. 55.)

Pending before the court is a motion for summary judgment defendants filed on September 5, 2005.[1] (Doc. 102).   Plaintiff filed an opposition to the motion on March 1, 2007.  (Docs. 157, 162).[2]  Defendants  filed a reply to plaintiff's opposition on  April 9, 2007.  (Doc. 166).  On April

---

[1] This case has an extensive procedural history that is not outlined fully as it is not relevant to the current motion.  However, it is noted that defendant Bunker also filed a motion for summary judgment on December 27, 2006.  His motion will be addressed in a separate order.

[2] In his opposition plaintiff requests that the court take judicial notice of his verified amended complaint, his verified declaration filed with his opposition, as well as two declarations of individuals who are not parities to this action.  Pl. Opp. at pg. 3.  A verified pleading constitutes opposing affidavit for purposes of summary judgment rule.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).  An opposition also constitutes opposing affidavit for purposes of summary judgment rule.  Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Moreover, a pleading and opposition must be verified to constitute opposing affidavits.  Moran v. Selig, 447 F. 3d 948 (9th Cir; 2006).  Since plaintiff has verified his pleadings and opposition, the court has considered these documents.  However, plaintiff's motion for judicial notice shall be denied.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts."  York v. American Tel. & Tel. Co., 95 F.3d 948, 958 (10th Cir. 1996) (internal quotations omitted); see General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997).  No purpose is served by taking judicial notice of the fact

20, 2007, plaintiff also filed leave to respond to defendants' reply to the motion for summary judgment. (Doc. 167). The court will grant plaintiff's motion and has considered all of these documents in determining the merits of the motion for summary judgment.

       B.    <u>Legal Standard</u>

       Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. <u>Fed. R. Civ. P. 56(c)</u>. Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)</u>. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id. at 322</u>. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id. at 323</u>.

       If the moving party meets its initial responsibility, the burden then shifts to the opposing

---

that plaintiff filed a verified complaint and opposition. The facts contained within it are subject to dispute, making them inappropriate for judicial notice.

       Plaintiff also filed an opposition to the use of his deposition taken May 24, 2005, because defendants failed to provide the plaintiff with a verified copy of his deposition. In this motion, plaintiff requests that sanctions be granted and that the motion be denied on that basis. (Doc. 159). Pursuant to Rule 30(f)(2) of the Federal Rules of Civil Procedure, a party may obtain a copy of the deposition upon reasonable payment of fees. Therefore, plaintiff is only entitled to a copy of the deposition if he requested one and paid for it. There is no provision under the Federal Rules or the Local Rules for free copies of deposition transcripts. Further, the expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress. See <u>Tedder v. Odel, 890 F.2d 210 (9th Cir. 1989)</u> (citations omitted). The in forma pauperis statute does not authorize the expenditure of public funds for the purpose sought by plaintiff in his objection.

1  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

2  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

3  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

4  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

5  material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586

6  n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

7  might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

8  U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

9  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

11  (9th Cir. 1987).

12        In the endeavor to establish the existence of a factual dispute, the opposing party need not

13  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

16  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

18  amendments).

19        In resolving the summary judgment motion, the court examines the pleadings, depositions,

20  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).

21  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

22  inferences that may be drawn from the facts placed before the court must be drawn in favor of the

23  opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

24  (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

25  party's obligation to produce a factual predicate from which the inference may be drawn.  Richards

26  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

27  Cir. 1987).

28        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

C.    Plaintiff's Claims

Plaintiff alleges that on July 15, 2001, he filed an emergency ADA, CDC  appeal with defendant Edgar Castillo, former Chief Medical Officer, because his wheelchair would not roll, the wheels were wobbling, and the bearings were making loud cracking sounds.  (Am. Comp. attachment at pg. 1).  On July 25, 2001, defendant Castillo ordered that plaintiff's wheelchair be repaired. Id.  Plaintiff alleges that defendants Castillo and Curtis, ADA Medical Coordinator were contacted  on several occasions to get the wheelchair repaired between July 2001 and January 28, 2002 when he fell out of the wheelchair.  Id. at 2-3.

Specifically, plaintiff alleges nothing had been done to repair his wheelchair from July 25, 2001, until October 2001.  He subsequently filed an appeal to the third level, the Director's level of review, because no repairs had been made.  Id. at 3. He alleges that the appeal was returned to defendant Doris Duvall, the appeals coordinator. Id. He never heard from defendant Duvall.  Id.

Plaintiff alleges that in November 2001, defendant Curtis brought a wheelchair to replace the plaintiff's old wheelchair but did not make the required adjustments. Id. at 4. He alleges that defendant Curtis did not wait for the plaintiff to go pick up the chair so that it could be adjusted. Id. Instead, plaintiff alleges that defendant Curtis just left the wheelchair with MTA Behrens on the E-yard. Plaintiff alleges that MTA Behrens told the plaintiff that defendant Curtis said he did not want to see the plaintiff.  Id.  Plaintiff believes that the reason that defendant Curtis did not want to see him was because of the numerous calls and complaints that had made about the wheelchair not being repaired.  Id. at 4-5.  Upon receiving the wheelchair, plaintiff alleges that it was too wide to fit through the cell door in the building. Id.  The new wheelchair was exchanged for the plaintiff's old wheelchair so that adjustments could be made on Monday. Id. In the interim, the wheelchair was given to another inmate. Id at 6.  The new wheelchair was never returned to the plaintiff.

Plaintiff alleges several attempts to get this wheelchair repaired were made by contacting defendants Curtis and Castillo but there was no response.  Id. at 7.  He filed another a second

emergency appeal on November 18, 2001. Id.  Plaintiff alleges MTA Behrens attempted to contact defendants Castillo and Curtis about the repairs not being made and nothing happened. Id. MTA Behrens took plaintiff's complaint to Derrall Adams, the Warden, and it was reported that the appeal he filed should be put through as an emergency appeal.

On December 17, 2001, plaintiff was contacted by defendant King, Correctional Counselor II,  in response to the appeal he had filed in December 2001. Id. at 7. At that time, plaintiff informed defendant King about this history of his wheelchair repair.  Id.  On or about December 20, 2001, plaintiff received a second level response from defendant Barbeiro, former Medical Appeals Analyst, and defendant Castillo, indicating that an appointment to repair the wheelchair would be made by defendant Walker, Correctional Officer.  If an appointment was not made, plaintiff should contact defendant Walker to arrange a time to get the wheelchair repaired. Id. at 8.  Plaintiff alleges that defendant Walker was contacted by MTA Behrens to repair the chair and that defendant Walker told MTA Behrens he would come and get the wheelchair that day.  Id. at 8.  Defendant Walker never came to pick up the wheelchair.  Id.  Several calls were made to defendants Kings and Barbeiro about the appointment not being kept but there was no response. Id.

On December 27, 2001, plaintiff alleges that the right foot rest broke off of his wheelchair due to the lack of repair on the chair. Id. at 8-9.  As a result, he had to cross his right leg over his left leg to keep his right foot from dragging on the floor.  Id. On December 28, 2001, plaintiff talked with MTA Behrens who called defendant Walker and was told by defendant Walker that "he would get there when he got there."  Id. at 9.

On January 2, 2002, plaintiff saw defendant Jason Bunker and related the history and the concerns about his wheelchair to him. Id. at 10.  Plaintiff alleges defendant Bunker called defendant Walker.  Id. at 10. Defendant Bunker told plaintiff that he had spoken to defendants Walker and Mathos and was told that they were aware of the problem and they were handling it.  Id.  Defendant Bunker told plaintiff that he would not help him anymore.  Id.

On January 8, 2002, plaintiff alleges he resubmitted the appeal.  Id. at 11.  Plaintiff alleges that rather than deal with the appeal, defendant Duvall, Appeals Coordinator, forwarded the appeal

1    to the Director's level, the third level of review.  Id. at 11.

2        On January 9, 2002, plaintiff attempted to interview Defendant Mathos but did not get a

3    response. Id. at 11.  After that point, plaintiff alleges he would go to the MTA medication window

4    on the E-yard repeatedly and when he tried to ask about the wheelchair, the staff would close the

5    office window and he was ignored.  Id. at 11-12.  Plaintiff alleges he went back to the MTA window

6    requesting an interview with defendants Castillo, King, Walker, Barbeiro, Duvall, and Mathos but

7    his requests were ignored. Id. at 12.

8        Plaintiff alleges his wheelchair broke causing him to fall out of the wheelchair on January

9    28, 2002. Id. at 13.  Plaintiff was given medical care and he was returned to his cell where he was

10   ordered to say in bed for two days pending a medical follow-up.  Id.  A brand new wheelchair was

11   brought to his cell.  Id.

12       Later that day, defendant Walker came to plaintiff's room with plaintiff's old wheelchair

13   claiming that it had been fixed and requested that plaintiff return the new wheelchair.  Id. at 14.

14   Plaintiff alleges that defendant Walker was indignant and sarcastic and requested that plaintiff return

15   the new wheelchair in exchange for his old chair.  Id.  Plaintiff alleges that the right arm rest was still

16   broken and unfixed from the incident, the bottom of the wheelchair was still dropping out, and the

17   right footrest had still not been repaired.  Id.

18       On January 29, 2002, plaintiff was not allowed to stay in bed because the medical lay-in had

19   not been posted. Id. at 15.  Plaintiff alleges that he went to the MTA's window and spoke to

20   defendant Dulay, MTA.  Plaintiff wanted to see the doctor for severe lower back pain and bumps and

21   numbness in his legs. Id. Plaintiff alleges that defendant Dulay told him that plaintiff could not see

22   the doctor until January 30, 2002, even though the doctor was available on the day of the request.

23   Id.

24       On February 21, 2002, plaintiff filed a tort claim for CDC inmates which was rejected. Id at

25   16.  On February 21, 2002, plaintiff alleges he contacted defendant Duvall about the appeals that

26   were not processed regarding the old wheelchair.  Id.  Plaintiff was interviewed by defendant Duvall.

27   Id.  He alleges that she deliberately confused issues with regard to his appeal by construing his

28

concerns to relate to the new wheelchair rather than the old chair which resulted in the Director

denying his appeal on March 5, 2002. Id. at 16-17.

On March 12, 2002, plaintiff filed another ADA emergency appeal. Id. at 17. He alleges he

was transferred from the E-yard to the C-yard on March 16, 2002, as a form of punishment for filing

the appeal. Id. He also alleges he was pressured to withdraw that appeal and was  forced to purchase

the "older"  wheelchair which had caused his injury. Id at 17.

        D. Summary of Undisputed Facts [3]

        1. Brown is serving a life sentence following his November 5, 1998, conviction for first

degree murder and being a felon in possession of a firearm.  Mossler Decl. at ¶ 2.

        2. At the time of events described in the amended complaint, Brown weighed approximately

350 pounds.  Am. Compl. at 3.

        3. Brown was given a new wheelchair in 1999 when he was housed at High Dessert State

Prison until 2001. Brown Depo., at 29:11-17.

        4. According to Brown's deposition testimony, he experienced no problem with the

wheelchair he received from High Desert State Prison until 2001. Brown Depo., at 30:8-12.

        5. But on July 31, 2000, Brown filed an institutional grievance complaining about the poor

condition of the wheelchair. Mossler Decl. ¶ 3.

        6. In September 2000, Brown was given an extra large wheelchair in response to the July 31,

2000 grievance.  Id.

        7. On December 17, 2000, Brown informed prison staff that his wheelchair was broken, and

that he was concerned that he may fall out of it and injure himself. Mossler Decl. ¶ 4.

        8. Three days later, Brown was given another new chair by the medical department at SATF.

Id.

_____

[3] The undisputed facts were ascertained from the defendants' motion for summary judgment and their reply
as well as from plaintiff's amended complaint, his opposition and attached declaration, and the plaintiff's reply.
Plaintiff attempted to dispute facts #3-6, 16-19, 21-25, 29, and 32 in his opposition.  However, in attempting to
establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is
required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
support of its contention that the dispute exists.  Rule 56(e);  Matsushita, 475 U.S. at 586 n.11. Plaintiff did not
submit admissible evidence to rebut these facts. Accordingly, the court deems the facts undisputed.

9.  Brown claims that he noticed that the wheel bearings were going bad in the new wheelchair in February or March 2001. Brown Depo., at 30:13-23; 31:17-25.

10.  Brown waited until July 15, 2001, to file an "emergency" institutional grievance to get the wheelchair repaired. Brown Depo., at 36:22-37:1.

11.  Defendant Castillo granted Brown's inmate appeal number SATF-E-01-03136 on July 25, 2001, to have the wheelchair repaired or replaced. Am. Comp., 1:19-28.

12. On September 4, 2001, defendant Castillo issued an order for a new wheelchair to be obtained from Invacare. Mossler Decl. at ¶ 5.

13.  Within days of receiving Dr. Castillo's order dated September 4, 2001, defendant Curtis ordered several new wheelchairs including a wheelchair large enough to accommodate Brown's size. Decl. of Curtis, ¶2.

14.  A new wheelchair was ordered by special purchase order on September 12, 2001. Delivery was expected to take six to eight weeks. Mossler Decl. at ¶6.

15. Defendant Curtis brought the new wheelchair to the E-yard where Brown was housed to replace Brown's old wheelchair in November 2001.  Am. Comp. 3:27-28.

16.  Adjustments to medical devices may not be made by prison staff in the absence of an order from a physician. Dec. of Curtis, ¶ 3.

17.  As the Medical ADA Coordinator, defendant Curtis was not authorized to make adjustments to Brown's wheelchair. Decl. of Curtis, ¶4.

18. As the Medical ADA Coordinator, defendant Curtis's job was to purchase necessary medical devises for inmates.  His job did not include distribution for adjustments of those medical devices. Decl. of Curtis, ¶6.

19. When defendant Curtis was notified that the new wheelchair would not fit through Brown's cell door, he advised the MTA to contact Brown's treating physician to obtain an order to modify the wheelchair. Decl. of Curtis, ¶ 5.

20. Defendant Barbeiro began working as a medical appeals analyst at SATF in July 2001. Decl. of Barbeiro, ¶ 2.

21. Defendant Barbeiro's job was to process medical appeals filed by inmates. She is not a physician, and had no authority to compel custody or medical staff to take particular actions in response to an inmate appeal. Decl. of Barbeiro at 3.

22. When defendant King interviewed Brown in connection with Brown's inmate grievance, he was on special assignment in the Inmate Appeals Office. While there, defendant King's job was limited to assisting in the processing of a back-log of medical appeals by conducting inmate interviews for the First Level Appeal Response. Dec. of King, ¶ 2.

23. Once the interview is completed, defendant King turned the report over to the Medical Appeals Analyst for further processing. Defendant King had no control over the ultimate outcome of the appeals, and no authority to order that particular actions be taken in response to an inmate appeal. Decl. of King, ¶ 3.

24. As the Inmate Appeals Coordinator at SATF, Defendant Duvall's job consists of processing inmate grievances. Decl. of Duvall ¶ 2.

25. Beyond processing Brown's inmate appeals, defendants Barbeiro, King, and Duvall had no authority to order medical or custodial staff to take any action in furtherance of Brown's grievance. Decl. of Barbeiro, ¶4; Decl. of King, ¶ 4; Decl. of Duvall, ¶ 2.

26. Before defendant Walker took over responsibility for wheelchair repair, wheelchairs were repaired in the prison's clinic, but keeping tools and equipment necessary to perform the repairs in the clinic raised security concerns with prison administrators. In late November 2001, it was decided that wheelchair repairs would be performed in the bicycle repair shop. Decl. of Walker, ¶2.

27. Defendant Walker was assigned the duties of bicycle repair shop in May 2001. In November 2001, wheelchair repair was added to his responsibilities. Decl. of Walker, ¶ 3.

28. When the responsibility for wheelchair repair was initially shifted from the clinic to the bicycle repair shop, defendant Walker had no means of collecting the damaged or malfunctioning wheelchairs himself. The recycling officers were assigned the task of going to the various yards to pick up wheelchairs needing repair, and delivering them to the bicycle shop. They would pick up

1  damaged wheelchairs whenever they were notified by the MTA on the yard that a chair needed

2  repair.  Decl. of Walker at 4.

3      29.  To this day, it has never been defendant Walker's responsibility to pick up a wheelchair

4  needing repair, and he has never done so.  And with the exception of the afternoon of January 28,

5  2002, when he attempted to return Brown's wheelchair to him, he has never taken it upon himself

6  to return a repaired wheelchair to an inmate. Decl. of Walker, ¶ 5.

7      30.  During the time of the events giving rise to this case, defendant Mathos was working

8  as a Public Health Nurse at SATF.  Decl. of Maths, ¶2.

9      31.  In her capacity as Public Health Nurse, defendant Mathos was responsible for testing

10  and tracking infectious diseases within the inmate population.  Decl. of Mathos.¶ 3.

11      32.  Brown was seen by Dr. Deering immediately after having been allegedly thrown from

12  his wheelchair.  At that time, Dr. Dearing noted no injuries, and "no evidence of fx (fracture) or

13  bruise."  No treatment was indicated, no lay in was ordered, and Brown was released back to his

14  cell.

15      33.  Brown admits that he was not cut, but claims he had some abrasions and bumps when

16  he fell out of the wheelchair on January 28, 2002. Brown  Depo. at 115:4-5; Am. Comp. at 15:11-

17  13.

18      E.    Discussion

19      1. Eighth Amendment Claims

20      A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1)

21  "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'"

22  and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391

23  F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)

24  (citation omitted)).  The "deliberate indifference" standard involves an objective and a subjective

25  prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v.

26  Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A serious

27  medical need is one in which the failure to treat a condition could result in further significant injury

28

1    or to the unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th

2    Cir.1992).  Second, the prison official must act with a "sufficiently culpable state of mind," which

3    entails more than mere negligence, but less than conduct undertaken for the very purpose of causing

4    harm.  Farmer v. Brennan, 511 U.S. at 837.    A prison official does not act in a deliberately

5    indifferent manner unless the official "knows of and disregards an excessive risk to inmate health

6    or safety." Id.

7         In applying this standard, the Ninth Circuit has held that before it can be said that a

8    prisoner's civil rights have been abridged, "the indifference to his medical needs must be

9    substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause

10   of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle v.

11   Gamble, 429 U.S. 97, 105-06 (1976).  Even gross negligence is insufficient to establish deliberate

12   indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

13   1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of

14   deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

15        a. Objective Component

16        The non-repair of plaintiff's wheelchair is a denial of serious medical need.  A medical need

17   is serious if the failure to treat it "'could result in further significant injury or the unnecessary and

18   wanton infliction of pain.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting

19   McGuckin, 974 F.2d at 1059 (quotations and citation omitted)).  "[T]he existence of an injury that

20   a reasonable doctor would find important and worthy of comment or treatment, . . . the presence of

21   a medical condition that significantly affects an individual's daily activities, and . . . the existence

22   of chronic or substantial pain" are indications of a serious medical need. Doty v. County of Lassen,

23   37 F. 3d 540, 546 n.3 (citing McGuckin,, 974 F. 2d at 1059-1060).

24        Plaintiff is immobile without the wheelchair which effects his activities of daily living and

25   a reasonable doctor would find the non-repair of plaintiff's wheelchair worthy of comment.

26   Significant injury can also result if the condition of the wheelchair is compromised.  Thus, plaintiff

27   is denied the minimal civilized measure of life's necessities when he is not able to use the chair

28

1   safely.  Therefore, the objective component of the deliberate indifference standard is met.

2        b. Subjective Component

3        1. Defendant Castillo

4        Defendant Castillo, former Chief Medical Officer, argues that he was not deliberately

5   indifferent to the risk to plaintiff's safety because there is no evidence that he knew that Brown

6   faced a substantial risk of serious harm if his wheelchair was not immediately repaired.  He argues

7   that he granted plaintiff's appeal on July 25, 2001, and issued an order for a new wheelchair on

8   September 4, 2001.  The wheelchair took approximately six to eight weeks to be delivered and it

9   was given to the plaintiff as soon as it came in.

10       Castillo argues that  the delay in time between granting the appeal and ordering the

11  wheelchair is not sufficient to support a claim for a constitutional violation since plaintiff was not

12  injured during that time period.  He also argues that although plaintiff's asserts that several

13  messages and phone calls were made and left for Defendant Castillo with no response, plaintiff

14  supplied no evidence to support who the maker of the calls were, or the dates the calls were made.

15  Am. Comp. at 2:25-29; 6:27-7:6.  Accordingly, that evidence is inadmissible and cannot be

16  considered by the court. The court agrees with Castillo on both of those points prior to December

17  2001.  However, there is a material issue of disputed fact as to Castillo's conduct after December

18  2001.

19       Plaintiff has presented evidence that on December 21, 2001, defendant Castillo ordered

20  plaintiff's wheelchair be repaired by defendant Walker and that plaintiff should contact defendant

21  Walker if the repairs were not made. Am. Compl. at 7:7-8:21; Pl. Opp. at Ex. C at pg. 2 & Ex. R.

22  After the repairs were not made and attempts to contact defendant Walker were unsuccessful,

23  plaintiff states that he did try to contact defendant Castillo.  Specifically, on January 9, 2002,

24  plaintiff alleges he requested an interview with defendant Castillo, but there was no response.

25  Plaintiff's Decl. at ¶ 28.  Defendant Castillo has presented no evidence to the contrary.  Whether

26  the defendant actually received plaintiff's request for an interview is a question of fact. Moore v.

27  Jackson, 123 F. 3d 1082 1087 (8th Cir. 1997).  Since this request was after the repairs were

28

1  authorized, plaintiff has presented evidence that defendant Castillo had notice that plaintiff's

2  wheelchair had not been repaired over five months after he had granted plaintiff's first appeal in

3  July.

4        Similarly, there is also a disputed fact as to whether the wheelchair defendant Castillo

5  ordered for the plaintiff was too wide to fit through the cell door.  Defendants allege that when a

6  wheelchair is too large, an inmate can manually push the cell door open wider. Mossler's Decl. at

7  Ex.G.  This causes the door to lock open.  Id. Once the inmate enters the cell, the control booth

8  officer can push a button that releases the cell door so the inmate can then manually pull the door

9  closed.  Id.  However, plaintiff alleges that the wheelchair was too large to fit through the door

10  without adjustments. Am. Comp. 4:10-27; Pl. Decl. at ¶ 10.  The size of the wheelchair is material

11  since it could be argued that Castillo was not indifferent to plaintiff's medical need if he ordered

12  a chair that plaintiff could have used but chose not to do so.  Given these disputed issues of material

13  fact, summary judgment is not appropriate.

14        Defendant Castillo argues that summary judgment should be granted because his only

15  involvement in this case related to the processing of an plaintiff's appeal.  While there is no liberty

16  interest in processing of appeals because there is no entitlement to a specific grievance procedure,

17  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); See also, Mann v. Adams, 855 F.2d 639, 640

18  (9th Cir. 1988), section 1983 also requires that there be an actual connection or link between the

19  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell

20  v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The

21  Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right,

22  within the meaning of section 1983, if he does an affirmative act, participates in another's

23  affirmative acts or omits to perform an act which he is legally required to do that causes the

24  deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

25  When a named defendant holds a supervisorial position, the causal link between the defendant and

26  the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d

27  858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442

28

U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In this case, Castillo was the Chief Medical Officer. In this role, he granted plaintiff's appeal and was the individual who had the authority to order a new wheelchair or order that plaintiff's wheelchair be fixed. Therefore, rather than just ruling on the appeal, he was aware that plaintiff's wheelchair needed repair and was directly responsible for issuing orders to remedy the situation. Thus, plaintiff seeks liability of defendant Casitllo due to his direct involvement in the case, not just the processing of his appeal.

Defendant Castillo also argues that summary judgment should be granted because plaintiff's injuries were not sufficiently serious.[4] The court finds this argument unpersuasive. The test for deliberate indifference consists of two parts. Jett v. Penner, 439 F. 3d 1091, 1096 (9th Cir. 2006) (citing McGuckin v. Smith, 974 F. 2d at 1050). First, the plaintiff must show a serious medical need. Id. A serious medical need is established by demonstrating that "failure to treat the prisoner's condition *could* result in further significant injury or the "unnecessary and wanton infliction of pain. McGuckin v. Smith, at 1059 (citing Estelle v Gamble, 429 U.S. at 104). Second, the plaintiff must show the defendant's response was deliberately indifferent. Id. Neither a finding that a defendant's actions are egregious or that they resulted in significant injury to a prisoner is required in order to establish a violation of the prisoner's constitutional rights. McGluckin v. Smith, at 1061. Furthermore, a prisoner need not show his harm was substantial, however, such would provide additional support for the inmate's claim that defendants were deliberately indifferent. Jett v. Penner, 439 F. 3d at 1096. (citation omitted).

---

[4] Defendant Walker also makes this argument.

1    In this case, plaintiff's alleges he experienced pain in his ankles when his footrest fell off

2    because he had to cross his legs to prevent them from dragging on the floor. Am. Comp. 9:5-11.

3    It is also undisputed that plaintiff suffered abrasions and bumps from the fall. UF 33. Plaintiff also

4    alleges he was suffering severe lower back pain and numbness in his legs which required him to

5    seek medical attention after his fall. Am. Comp. at 15: 11-14.  Drawing all reasonable inferences

6    in favor of the opposing party, plaintiff's alleged injuries may be sufficient to establish deliberate

7    indifference.  Therefore, defendant Castillo's motion for summary judgment is denied.

8        2. Defendant Curtis

9        Defendant Curtis argues that summary judgment should be granted because his job as ADA

10   Medical Coordinator was only to purchase the necessary medical devices for inmates and that he

11   had no authority to repair wheelchairs.  Within days of receiving the decision to order plaintiff a

12   new chair he did so and he delivered the chair when it arrived.  As a result, he was not deliberately

13   indifferent to plaintiff's needs because he was not authorized to make adjustments to plaintiff's

14   chair.  Finally, defendant Curtis argues he is not able to make adjustments to a wheelchair without

15   a physician's order.  As soon as defendant Curtis became aware that new wheelchair he had ordered

16   for plaintiff would not fit through the door, he advised the MTA to contact Brown's treating

17   physician to obtain an order to modify the wheelchair.

18       Plaintiff disputes the scope of defendant Curtis' job responsibilities arguing that Curtis could

19   have and should have made the repairs to the wheelchair.  He also argues that Curtis was contacted

20   numerous times about the lack of repairs made to his wheelchair.  However, the material issue is

21   whether defendant Curtis had the authority to get plaintiff's wheelchair repaired or replaced.

22   Although plaintiff argues that Curtis did have the authority and it was within his job description,

23   he has not presented any evidence to support that claim.  Mere speculation does not create a factual

24   dispute for purposes of summary judgment.  Toguchi v. Chung, 391 F. 3d 1051, 1059 (9th Cir.

25   2004).  In this case, plaintiff has not presented any evidence that Curtis was responsible for the

26   repair or replacement of wheelchairs in his role as ADA Medical Coordinator. To the contrary,

27   plaintiff's evidence indicates that it is the Facility Registered Nurses and the MTAs who are

28

1   responsible for securing repairs to inmate wheelchairs. Pl. Opp. at Exhibit U.

2       Plaintiff relies on conversations that MTA Behrens allegedly had with defendant Curtis to

3   establish Curtis' knowledge of the fact that the wheelchair he provided to plaintiff did not fit

4   through cell door.   Pl. Decl. at ¶ 13.   However, plaintiff has not submitted an affidavit from MTA

5   Behrens regarding his role in this case.   A verified complaint may be treated as an affidavit *to the*

6   *extent that the complaint is based on personal knowledge* and sets forth facts admissible in evidence

7   and to which the affiant is competent to testify." Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir.

8   1985) (citation omitted).   In this case, plaintiff has no personal knowledge of any conversations

9   Behrens may have had with Curtis.   Therefore, this evidence is inadmissible hearsay and cannot be

10  considered on summary judgment. "A trial court can only consider admissible evidence in ruling

11  on a motion for summary judgment."[5] Orr v. Bank of America, NT & SA, 285 F. 3d764, 773 (9th

12  Cir. 2002) (citation omitted).

13      Similarly, the fact that plaintiff alleges that numerous calls and messages were left for

14  defendant Curtis regarding the non-repair of plaintiff's wheelchair is also inadmissible.   While

15  plaintiff makes those allegations in his filings, it is not clear who made those calls, what was said

16  during the calls, or when they were made. Am. Compl. 2 : 27-28; 3: 28-4: 5: 5-15.   Accordingly,

17  this evidence is inadmissible evidence that the court cannot consider for purposes of summary

18  judgment.   Federal Rule of Civil Procedure 56(e).   Even if the calls were made, these are not

19  material facts in dispute if defendant Curtis did not have authority to repair or replace plaintiff's

20  wheelchair.   Therefore, defendant Castillo's motion for summary judgment is denied.

21      <u>3. Defendants King, Barbeiro, Duvall</u>

22      Defendants King, Barbeiro, and Duvall argue that their job was to merely process appeals.

23  They have no authority to order medical staff to perform medical procedures, or to force medical

24  or custodial staff to take any additional action in furtherance of plaintiff's grievance.   While plaintiff

25

26

27      [5] Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).   In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rules of Evidence 801(d) or falls

28  within a hearsay exception under Rules 803, 804 or 807.   <u>See</u>, Federal R. Evid. 802.

1    disputes the fact that these individuals did not have the ability to address his concerns regarding his

2    wheelchair, he has submitted no admissible evidence of this fact. In a motion for summary

3    judgment, if the moving party meets its initial responsibility, the burden then shifts to the opposing

4    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

5    Indus. Co. v. Zenith Radio Corp., at 586.  In attempting to establish the existence of this factual

6    dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender

7    evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support

8    of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11

9        In this case, plaintiff has not submitted any evidence of the duties and authorities of these

10    defendants and therefore, he has not established that they failed to perform an act that they were

11    legally required to perform.[6]  Johnson v. Duffy, at 745.  Arguments or contentions set forth in a

12    responding brief do not constitute evidence.  See Coverdell v. Dep't of Soc. & Health Servs., 834

13    F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence).  Accordingly, defendants

14    King, Duvall, Barberos' motion for summary judgment is granted.

15        4. Defendant Walker

16        Defendant Walker argues that is entitled to summary judgment because although he was

17    responsible for performing repairs on wheelchairs, it was the MTA's responsibility on the yard to

18    notify the prison recycling officers that the wheelchair was in need of repair.  The recycling officers

19    would then pick up the damaged wheelchairs and deliver them to the bicycle repair shop.

20        The material fact however is whether Walker knew plaintiff's wheelchair needed repair and

21    whether he was deliberately indifferent to plaintiff's serious medical need by failing to make sure

22    that the wheelchair was delivered to him so that the repairs could be completed.  Plaintiff submitted

23    the appeal ordering that defendant Walker complete the repairs.[7]  Pl. Opp. at Ex. C pg. 2.  While

24

25        [6] Plaintiff alleges these defendants were contacted regarding the non-repair of his wheelchair, however, the

26    contacts are not material if defendants did not ave authority to act on those requests.

27        [7] Plaintiff also argues that MTA Behrens and defendant Bunker called defendant Walker and discussed
repairing plaintiff's wheelchair.  Am. Comp. 8:13-17.  Since plaintiff has not submitted an affidavit from those

28    individuals the evidence is not admissible for the same reasons outlined in the discussion of MTA Behren's
statements to defendant Curtis.  The court notes that plaintiff alleges that he was present when defendant Bunker

1   Walker indicates that it was not his responsibility to pick-up the wheelchair, whether he knew that

2   he needed to do the repairs, and what actions he took to ensure those repairs were made is a

3   disputed fact.  Moreover, plaintiff alleges that when he fell out of the wheelchair, defendant Walker

4   came to his room to give the plaintiff his old wheelchair back but that it still had not been repaired.

5   Am. Comp. 14: 4-28.  Pl. Decl. at ¶ 32; Pl. Opp. Ex. K.  Although this occurred after plaintiff had

6   already fallen out of the chair, this evidence is material in that it may address defendant Walker's

7   state of mind and whether he was in fact deliberately indifferent to plaintiff's safety and medical

8   needs. Therefore, defendant Walker's motion for summary judgment is denied.

9        5. Defendant Mathos

10       Defendant Mathos argues that she is entitled to summary judgment because she was a Public

11  Heath Nurse at the time of this incident and that it would have been beyond the scope of her job

12  duties to respond to inquiries or issue orders concerning the repair or replacement of plaintiff's

13  wheelchair.  Decl. of Mathos at ¶ 3.  However, plaintiff has submitted evidence that Facility RN's

14  are responsible for the logging in and securing any necessary repairs to wheelchairs. [8] Pl. Opp. at

15  Ex. U.  Therefore, there is a material dispute as to what Matho's job was at the time and what

16  authority she had related to the repair of wheelchairs.  Additionally, plaintiff has submitted evidence

17  that he did notify defendant Mathos in her capacity as a R.N. informing her  that the wheelchair had

18  not been repaired on January 9, 2007.  Pl. Opp. at Ex. H.  Thus, whether defendant Mathos had

19  authority to take action regarding the repairs or replacement  of plaintiff's  wheelchair and whether

20  she was  indifferent to  plaintiff's  serious  medical  need  is  a  material  fact  still  in  dispute.

21  Accordingly, defendant Matho's motion for summary judgment is denied.

22  ///

23

24  called defendant Walker. Am. Compl. 10:3-9.  However, the content of that conversation is not outlined and it is not
    clear what if anything plaintiff heard.  Accordingly, the court did not consider  this evidence when ruling on the

25  motion for summary judgment since only admissible evidence can be considered for purposes of summary judgment.
    See, Civil Rule of Procedure Rule 56(e).

26

27       [8] Plaintiff also relies on a declaration submitted by defendant Bunker in support of his contentions that
    Defendant Mathos did have authority over the repair of plaintiff's wheelchair. Pl. Opp. at 12 :16-13:5.  The court did

28  not rely on  this evidence for purposes of denying defendant's motion and reserves its ruling until trial regarding the
    admissibility of this evidence as to defendant Mathos.

1      <u>6. Defendant Dulay</u>

2          Plaintiff alleges that after he fell, a two lay-in had been issued on January 28, 2002.  He

3   further alleges that defendant Dulay was deliberately indifferent to his medical needs because when

4   plaintiff questioned Dulay about the lay-in, Dulay indicated that no lay-in had been ordered. Pl.

5   Decl. at ¶ 33.  Plaintiff further alleges that Dulay would not allow plaintiff to see the doctor until

6   the following day on the January 30, 2002.  <u>Id.</u>

7          Plaintiff has not presented any evidence that a lay-in was in fact issued on January 28, 2002.

8   Plaintiff admits that he saw Dr. Deering on January 28, 2002. Pl. Opp. at 13: 13-24.  However,  the

9   documents plaintiff submits indicates that plaintiff had no evidence of fracture or bruises, that no

10  treatment was recommended, and plaintiff had been sent back to his cell.  Pl. Opp. at Ex. J.

11         Plaintiff alleges that Dulay falsified a document on January 29th to cover up the fact that he

12  was refusing plaintiff the lay-in and the opportunity to see the doctor.  He submits two lay in orders

13  dated January 29, 2002 and January 30, 2002, in support of his claims.  Pl. Opp. L.  However,

14  plaintiff offers no other evidence as to Dulay's involvement with these orders other than his own

15  speculation.  Mere speculation does not create a factual dispute for purposes of summary judgment.

16  <u>Toguchi v. Chung, 391 F. 3d. at 1059</u>.

17         Furthermore, even viewing the evidence in the light most favorable to the plaintiff, he was

18  allowed to see the doctor the next day.  There is no evidence to suggest that plaintiff had a serious

19  medical condition on January 29th that required immediate attention.[9]  Thus, a one day delay does

20  not constitute deliberate indifference to a serious medical need and defendant Dulay's motion for

21  summary judgment is granted.

22         2.    <u>Qualified Immunity</u>

23         Defendants  argue that they are entitled to qualified immunity.  Because the court grants

24  defendants King, Duvall, Barbeiros, and Dulay's motions for summary judgment, the court will not

25

26

27         [9]  Plaintiff did submit a report from James Carter Thomas, M.D. indicating that he was seen on March 13,
    2002, for an examination of his lumbosacral spine. Pl. Opp. Ex. J.   However, this evidence in inadmissible hearsay.

28  <u>Federal Rules of Civil Procedure Rule 801(c)</u>.  Further, plaintiff did not present evidence that the conditions outlined
    in the letter are related to his fall in January 2002.

address the issue of qualified immunity related to those defendants.  However, the court will address defendants Castillo, Mathos, and Walker's arguments.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established.  Id.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Saucier, 533 U.S. at 202 (citation omitted).

In viewing the facts in the light most favorable to the plaintiff, it may be established that defendants Castillo, Mathos, and Walker were deliberately indifferent to plaintiff's serious medical need.  In his appeal in July 2001, plaintiff notified defendant Castillo that repairs to his wheelchair were needed.  Castillo agreed, granted plaintiff's appeal, and ordered plaintiff a new wheelchair.  Plaintiff alleges the new wheelchair was not functional because it was too wide to fit through the cell door.  The new wheelchair was given to another inmate and plaintiff's "old" wheelchair was returned to him.  No repairs to plaintiff's "old" wheelchair had been made.  On December 21, 2001, defendant Castillo ordered that plaintiff's wheelchair be repaired by defendant Walker.  After that time, the condition of the wheelchair continued to deteriorate when the right footrest broke off.

On January 9, 2002, plaintiff's wheelchair still had not been repaired and plaintiff contacted both defendant Castillo and Mathos to notify them that the repairs were not made.  Plaintiff alleges he did not get any response from the defendants.  Plaintiff fell out of the wheelchair on January 28, 2002.  That day, defendant Walker attempted to return plaintiff's wheelchair to him which plaintiff

alleges still had not been fixed.  Based on these facts, a jury may be able to find that plaintiff's constitutional rights were violated.

Tuning to the second prong, the court must determine whether the right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  At the time of the incident in July 2001-March 2002, the law regarding the medical treatment of prisoners was "sufficiently clear that a reasonable official would understand that what he is doing violates that right," Saucier, 533 U.S. at 202 (citation omitted); See, Farmer v. Brennan, 511 U.S. at 837. Defendants make no argument to the contrary.  With respect to deliberate indifference to a serious medical need standard, the "inquiry . . . is whether the official knows of and disregards a risk to inmate health or safety.  Id.

While the resolution of the factual issues may well relieve the prisons officials of any liability in this case, if the plaintiff's version of the facts were to prevail at trial, a jury may conclude that the officers were deliberately indifferent to a serious medical. Plaintiff had been trying to get his wheelchair repaired for several months and tried to contact the individuals he believed were responsible for rectifying the problem but got no response.  No reasonable officer would have believed that allowing a wheelchair-bound inmate to ride in a wheelchair in need of repair could not have resulted in a substantial risk to inmate health or safety.  Defendants also do not satisfy the second prong since there are material factual disputes including :1) what if any notice the defendants had of the non-repair of plaintiff's wheelchair, 2) the authority and ability they had to get the wheelchair repaired, and 3) whether the wheelchair that was ordered was in fact too large to fit through the cell door. Under such circumstances, the officials' actions are not protected by qualified immunity.

3.    ADA Claims

Plaintiff alleges that defendants violated his rights under the Americans with Disabilities Act (ADA).  Title II of the Americans with Disabilities Act provides that:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act (RA) "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794.  Title II of the ADA and the RA apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.  "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

It appears that plaintiff  has a disability within the meaning of the ADA and the RA, however, plaintiff has not alleged that he was excluded or denied from a prison program based on his disability.  While plaintiff may have a case under section 1983 for failure to provide medical care, he does not state a claim under the ADA and defendants motion for summary judgment on this basis is granted.

///

///

23

Case 1:02-cv-06018-LJO-DLB   Document 168   Filed 09/28/07   Page 24 of 24

H.     Conclusions

       Based on the foregoing, IT IS HEREBY ORDERED :

       1) Plaintiff's motion for leave to respond to defendants reply to plaintiff's opposition to summary judgment is GRANTED;

       2) Defendants King, Barbeiro, Duvall, and Dulays' motion  for summary judgment based on plaintiff's Eighth Amendment claims and ADA claims are GRANTED, thus concluding this action against those defendants in its entirety;

       3) Defendants Walker, Mathos, and Castillo's motion for summary judgment based on plaintiff's ADA claims is granted;

       4) Defendants Walker, Mathos, and Castillo's motion for summary judgment based on plaintiff's Eighth Amendment claim is DENIED;

       5) The proceedings are remanded to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

**Dated:**   **September 28, 2007**          **/s/ Lawrence J. O'Neill**
                             UNITED STATES DISTRICT JUDGE